**Bufford Elvin LOCKARD, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–84–023–CR.**

Court of Appeals of Texas, Fort Worth.

Jan. 16, 1985.

Paul Conner, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and David L. Richards, Asst. Dist. Atty., Fort Worth, for the State.

Before FENDER, C.J., and HUGHES and JORDAN, JJ.

## OPINION

HUGHES, Justice.

Bufford Elvin Lockard has appealed his conviction for the offense of aggravated rape with a deadly weapon. TEX.PENAL CODE ANN. sec. 21.03 (Vernon 1974). He was indicted as a habitual offender, which allegations the jury found to be true, and then sentenced by the jury to life imprisonment.

We affirm.

On the afternoon of October 5, 1982, the victim, a speech therapist to handicapped children, was abducted at gunpoint by a white male, in a grocery store parking lot, and forced into her own car. After forcing her to drive a short distance, he blindfolded her with his shirt and drove her to a motel. While she was led to an upstairs room, she was able to observe the outdoor carpeting on the stairs. Once inside the room, he blindfolded her with a bra and after tying her to the bed, for four hours, he raped her, performed oral sex on her, and attempted anal sex.

After dark, he blindfolded the victim again and led her to her car which he drove to a secluded spot, there abandoning the victim and her car and fleeing on foot. She then drove to a friend's house and called the police.

Fort Worth police officers Neel and Dodd responded to the call. The victim gave Officer Neel a detailed physical description of her attacker. She commented that he continually sniffed paint. She also gave the officers a general description of the businesses located near the motel. Based on the latter information, Neel concluded that the attack occurred at the Rio Motel on Camp Bowie Boulevard.

After proceeding to the motel and talking with the clerk, he learned that a man matching the description of the attacker had registered under the name "Jerry D. Wally." The hotel registry showed that the man had originally been registered in room 256, but had moved to 257 very recently. After entering room 256 with a passkey, Officer Neel believed, based on his observations (odor of paint, rope tied to a section of the headboard, a paper sack with a bra), that the offense had been committed there.

Knowing that the person to whom room 256 had been registered had moved to room 257, Neel went to that room and knocked on the door. The appellant answered through the door, asking who it was. The officer said that it was the police and that they wanted to talk to him. Appellant opened the door and told them to come in if they wanted to talk. Officer Neel noted that the appellant matched the description of the attacker, including the height, weight, hair color, birthmark, and knife on the belt. He also noted that the room smelled of paint, and that several aerosol cans of paint, articles of women's clothing, and sex aids were lying on top of a dresser in the room in plain view. Neel testified that, based on his experience, appellant appeared to be intoxicated on something other than alcohol. Officer Neel asked the appellant his name, to which appellant replied, "Jerry Lee Wally." Officer Neel then informed appellant that he was under arrest, and read the *Miranda* warning to appellant.

The next day, the victim identified appellant as her attacker from a photo lineup. She also identified him at trial.

In his first two grounds of error, appellant claims that the trial court erred by admitting police testimony about (1) incriminating items found in appellant's motel room and (2) about oral statements made by appellant because both were fruits of a purportedly illegal warrantless arrest. Appellant admits that there was an abundance of evidence to obtain an arrest warrant and asserts that the police should have done so because there was no indication that the appellant would attempt to escape, as is required by TEX.CODE CRIM.PROC. ANN. art. 14.04 (Vernon 1977) as a pre-condition to warrantless arrest. We disagree.

According to the evidence, appellant was not under arrest until after the police knocked on the door of the appellant's motel room and were admitted voluntarily. Appellant matched the description given by the victim, and the items of physical evidence of which appellant now complains (paint cans, women's clothing, sex aids) were in plain view. At this point, the intrusion into appellant's privacy was merely an investigative detention.

An investigative detention is a lesser intrusion into the privacy of an individual than an arrest. *Ferguson v. State*, 573

S.W.2d 516, 522 (Tex.Crim.App.1978). Given that the officers in this case could have obtained an arrest warrant, we find no authority which required them to do so, rather than pursue the lesser intrusion of simply knocking on the door and asking to talk to the occupant. The appellant was not obligated to invite the officers inside to talk. Once they were admitted into the room voluntarily, the officers were entitled to look for evidence in plain view. The officers were later entitled to testify as to their observations.

Perhaps the officers should have obtained a warrant before making an arrest. However, we do not address this question because we hold that the evidence observed and testified to was the fruit of an investigative detention, not of an arrest, legal or otherwise.

Therefore, we hold that it was not error to admit testimony of the physical evidence and oral statements which resulted from the police investigation. Appellant's first two grounds of error are overruled.

Appellant's third ground of error complains of the admission of the testimony of police to the effect that the appellant stated to them that his name was "Jerry Lee Wally" without first having been warned of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant contends that he was under "custodial interrogation" at the time he gave them the false name and that his statements were, therefore, subject to *Miranda*. We disagree.

The officer testified that after having a chance to look around appellant's room and see all the evidence of the crime, appellant was not free to leave. He asked the appellant his name, to which appellant replied, "Jerry Lee Wally," thereby linking himself to the scene of the crime inasmuch as a person by that name had registered in the adjacent room, number 256. Appellant was then placed under arrest and was read his rights.

■ Without addressing the question of whether the appellant was in custody when the officer asked him his name, we hold that he was not then under interrogation. We do not think that this was the kind of question which was prohibited in *Miranda*. Appellant cites no authority, and we find no authority, for the proposition that asking the name of a person under arrest is an attempt to elicit incriminating statements from his own mouth. The fact that appellant in this case gave the police a fictitious name, one which linked him to the crime, does not negate the innocence of the question.

TEX.PENAL CODE ANN. sec. 38.02 (Vernon Supp.1984) specifically makes it a crime not to identify oneself truthfully to a police officer after being lawfully detained.

We hold that the testimony of the police officer that appellant stated his name was "Jerry Lee Wally" was properly admitted. Appellant's third ground of error is overruled.

Appellant's fourth ground of error complains of the trial court's refusal to allow defense counsel to impeach the testimony of the victim with a prior inconsistent statement without recalling the witness to the stand.

On January 17, 1984, the victim testified during a hearing on a motion to suppress the photo lineup identification, out of the presence of the jury, as follows:

Q. Were you able to see any distinguishing marks on his arms at all?

A. Yes. He had either a tatoo or a mole on his arm.

Q. You indicated that the man who abducted you had a ... Either a tatoo or a mole on one of his arms; is that right?

A. Yes.

The witness was later afforded a chance to see appellant's arms when the court ordered him to roll up his sleeves.

On January 18, 1984, during the course of the trial and in the presence of the jury, the victim testified as follows during cross-examination (for the sake of anonymity, the victim's name is deleted from our rendition of the facts):

Q. Okay. Mrs. _____, yesterday you gave some testimony, did you not, outside of the presence of the Jury?

A. Yes.

Q. Did you tell the Court at that time that you were not sure whether the mark upon the person who abducted you was a tatoo or a mole?

A. Yes, I did say that.

Q. All right. And I believe you further said that in your opinion, your recollection, it was probably about the size of a quarter; is that right?

A. Yes.

Q. And isn't it also further true, Mrs. _____, that yesterday you were unable to remember which arm that mark was on; is that correct?

A. You asked for a specific arm. There was one on each arm.

Q. So the answer to my question is, is that what you said yesterday? Did you tell the Court yesterday that there was one on each arm?

A. I think so. I don't ... I don't remember.

Q. All right. You were given the opportunity yesterday to look at both of the Defendant's arms here in Court outside the presence of the Jury; were you not, ma'am?

A. Yes.

MR. BANKSTON [defense attorney]: Your Honor, at this time we would pass the witness, but we would reserve the right for further recall in the event that becomes necessary—

On January 19, 1984, appellant's attorney offered to present to the jury that portion of the victim's testimony from January 17, 1984, which is recited above. Appellant declined to recall the victim to the stand, claiming "she already denied having made the statement, so I think we are in a posture now ... Not be anything else gained to calling her to the stand except to re-ask the question and go on through it again." The State objected on the basis that the victim had not been confronted with any inconsistency and, therefore, had not been afforded an opportunity to explain her testimony. The court sustained the objection.

In his brief, appellant acknowledges that a witness must be given a chance to explain an alleged inconsistency in that witness' testimony. TEX.R.EVID. 612(a). The appellant asserts that the victim in this case was confronted with an inconsistency and chose not to explain it. We disagree.

█ The testimony of January 18, 1984, which we have recited indicates that the victim was questioned as to what she had said on the previous day, to which she replied, "I don't remember." Appellant's attorney failed to have her actual statements read back to her so she could explain them. We hold, therefore, that the trial court was correct in refusing to allow appellant to introduce those statements after the victim had finished testifying without recalling her to the stand. Appellant's fourth ground of error is overruled.

Appellant's fifth ground of error alleges that testimony concerning a blood test of the victim was improperly admitted because there was no chain of custody proven and because the vial in which the blood had been kept was not introduced.

The evidence shows that Dr. Steven Sakovich, a physician at John Peter Smith Hospital, performed a rape examination on the victim on October 5, 1982. Among the specimens and samples taken during the exam was a blood sample. The sample was labelled by him, placed in an envelope which was sealed and carried to the front of the emergency room, and placed in a crime lab lock box.

Susan Taylor, a Fort Worth Police Department Crime Lab Serologist, removed the envelope from the refrigerated lock box on October 8, 1982. The envelope was still sealed and labelled. After the seal was broken, the vial was taken out of the envelope and tests were conducted. Taylor testified that because blood samples are not suitable for testing after three to four months, and, because if maintained at room temperature such samples eventually grow bacteria and pose a health hazard, blood

vials such as the one tested here are discarded.

■ Appellant argues that there was a "testimonial" break in the chain of custody between Dr. Sakovich and Susan Taylor because Taylor never testified that the blood vial she tested was the same one Dr. Sakovich had labelled. We disagree. Taylor testified that the blood vial she tested was removed from a sealed envelope which Dr. Sakovich had labelled and placed in a lock box. The fact that the vial itself was not labelled does not break the chain of custody.

The case of *Brown v. State*, 240 S.W.2d 310 (Tex.Crim.App.1951), which appellant cites as authority, is not on point. In that case, a blood sample was drawn from the defendant by a nurse in the presence of a police officer. The nurse did not testify and the officer only testified that the blood was placed in a tube and left at the hospital. There was no proof that it was labelled by the same person who drew the blood. We hold that, in this case, there was no testimonial break in the chain of custody.

■ Appellant further contends that there was a "physical" break in the chain of custody because the vial in which the blood had been kept was not introduced and the blood itself had been disposed of. We again disagree.

Taylor testified that blood cannot be safely stored more than three to four months without posing a health hazard, and that even when refrigerated it would begin to decompose. She also testified that there is no need to save the blood as long as the donor is alive and available to give additional blood if needed. Furthermore, we hold that it was not necessary to introduce the blood vial because Taylor testified that the blood vial she tested was removed from a sealed, labelled envelope which was introduced. Appellant's fifth ground of error is overruled.

Appellant's sixth ground of error complains of the introduction of two Petitions to Revoke Probation and two Orders Revoking Probation as parts of a penitentiary packet for enhancement purposes during the punishment phase of the trial. Appellant contends that these do not constitute final convictions as required by TEX.CODE CRIM.PROC.ANN. art. 37.07(3)(a) (Vernon 1981). We disagree.

■ Orders Revoking Probation were expressly made admissible in the recent case of *Elder v. State*, 677 S.W.2d 538 (Tex. Crim.App.1984). Their admission into evidence, therefore, was clearly not in error.

■ As for the Petitions to Revoke Probation, we hold there was no error because the trial court struck the alleged violations of the terms and conditions of probation before admitting the petitions. There is no case precedent precisely on point. However, in *Hernandez v. State*, 599 S.W.2d 614, 616 (Tex.Crim.App.1980), the court stated that an "Order Revoking Probation" would be admissible without the "Motion to Revoke Probation" because "it was the motion that supplied the harmful detail." In this case, the arguably harmful details (the alleged violations of terms of probation) were removed from the petitions, thereby making the petitions admissible. Appellant's sixth ground of error is overruled.

Appellant's seventh ground of error alleges that the trial court erred by admitting evidence of final convictions which were allegedly obtained in violation of plea bargain agreements, thereby violating the due process clauses of the United States and Texas Constitutions.

In October 1978, appellant was arrested in Tarrant County for theft. He was indicted in Cause No. 15275, subsequently pled guilty, and was sentenced to a four-year probated sentence. In November 1979, appellant was arrested in Tarrant County for burglary. He was indicted in Cause No. 19661A, pled guilty and received a five-year sentence. He pled "true" to the allegations in the motion to revoke his theft probation and received a four-year sentence to run concurrently with his burglary sentence. After four months in the Texas Department of Corrections, his probation

was reinstated in Cause No. 15275 under TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 3e (Vernon 1977) (shock probation). Additionally, it appears that appellant was simultaneously placed on shock probation in Cause No. 19661A.

Seven months later, appellant was arrested in Parker County on two counts of burglary of a habitation. In one count, the injured party was named Jake Garner and in the other count, the injured party was named Fred Davies. The Tarrant County District Attorney filed a Petition to Revoke Shock Probation. A plea bargain was reached whereby the appellant would plead "true" to the probation violation involving Jake Garner, and the Parker County District Attorney would prosecute only the burglary of Jake Garner. The case involving Fred Davies was to be dismissed in both counties.

During the probation revocation proceeding, the attorneys on both sides asked the appellant if he knew he was waiving his right to appeal. He said that he did. The judge accepted the plea bargain except as to the right of appeal. He told the appellant that he was entitled to appeal and asked him if he desired to do so, to which the appellant replied, "No."

Ten days later, the appellant pled guilty in Parker County in Cause No. 8623 to the burglary of a habitation of Fred Davies. The case involving Jake Garner was dropped. The Parker County District Attorney apparently dismissed the wrong suit.

■ Nevertheless, the record clearly shows that the Parker County District Attorney agreed to prosecute only one of two burglary charges, which he did; and that the appellant agreed to plead guilty to only one of two burglary charges, which he did. If the Parker County District Attorney had prosecuted the correct charge, the appellant would have been just as obligated by the bargain to plead guilty to it as he was to the other charge. The error in no way affected the punishment assessed against the appellant and was, therefore, harmless. *See Johnson v. State*, 660 S.W.2d 536, 538 (Tex.Crim.App.1983).

Furthermore, the appellant did not object to the mistake, nor did he appeal the probation revocation in Tarrant County. The appellant did not raise the issue until one and one-half years later when all these convictions and revocations were included in the pen packet which was introduced at the punishment phase of the rape trial with which we are now concerned.

■ A voluntary plea of guilty waives all non-jurisdictional defects. *Wheeler v. State*, 628 S.W.2d 800, 802 (Tex.Crim.App. 1982). The voluntariness of the appellant's guilty plea was not affected by the error herein presented because the State substantially complied with their agreement to prosecute only one burglary charge and the appellant received, in substance, the benefit of his bargain. *See Pelton v. U.S.*, 465 F.2d 952, 954 (1972), *cert. denied*, 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599 (1973). We hold that any error was, therefore, waived at the hearing on the guilty plea. Since the appellant did not give notice of appeal within the statutory period of time required by TEX.CODE CRIM.PROC. ANN. art. 44.08(b) (Vernon Supp.1981), he cannot now use it to his advantage. Appellant's seventh ground of error is overruled.

■ In his eighth and final ground of error, appellant alleges error in the introduction of a pen packet used for enhancement purposes and containing evidence of a conviction in Cause No. 19661A which was allegedly not proven to be final.

The record shows that on January 17, 1980, the appellant pled guilty to a burglary in Tarrant County in Cause No. 19661A, and was assessed a punishment of five years. His probation from the prior theft conviction, Cause No. 15275, was revoked at the same time and the judge sentenced him to begin serving two to four years for the theft conviction and two to five years for the Tarrant County burglary conviction.

On March 27, 1980, appellant was released from the penitentiary and placed on "shock probation" in both causes. On December 12, 1980, the Tarrant County District Attorney filed Petitions to Revoke Probation in both causes, based on the Par-

ker County burglaries discussed in the previous ground of error. On May 5, 1981, appellant's probation was revoked in both causes, and he was sentenced in both causes.

Appellant points out that the record also contains a blank "suspension of sentence" form for Cause No. 19661A, which is located in the appellate record in between the January 17, 1980 sentence and the March 27, 1980 Order Setting Conditions of Probation. Appellant contends that since this form is blank (except for appellant's name and the cause number), there is no proof that he was ever placed on probation, and, therefore, the subsequent revocation could not be a final conviction. We disagree.

The existence of the blank form was a clerical error. The judgment and sentence for the Tarrant County burglary charge of January 17, 1980 proved the finality of that conviction and provided the basis for a subsequent probation revocation on May 5, 1981. The State was not obligated to provide an Order Granting Probation on March 27, 1980 (assuming that the Order Setting Conditions of Probation does not already constitute an Order Granting Probation). Appellant's eighth ground of error is overruled.

Affirmed.