Susie **ALVAREZ–MASON,** Appellant,

v.

The **STATE** of Texas, **Appellee.**

No. 13–90–201–CR.

Court of Appeals of Texas, Corpus Christi.

Dec. 20, 1990.

Carl Lewis, Tinker & Tor, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., James D. Rosenkild, Asst. Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and SEERDEN and KEYS, JJ.

OPINION

SEERDEN, Justice.

A jury found appellant guilty of aggravated assault and assessed her punishment at two years in prison and a $5,000 fine. We affirm.

In her sole point of error, appellant contends that the trial court erred when it refused her request to admit extrinsic evidence of a prior inconsistent statement which Veronica Gonzales had made about a material fact of the case. The State contends that the prior statement was not inconsistent and that, in any event, appellant failed to lay the proper predicate for the admission of the statement. We agree with the State's arguments.

A complete rendition of the facts is not necessary since appellant's argument is restricted only to the exclusion of a particular prior statement. To place appellant's point in proper perspective, however, it is necessary to note that a primary issue at trial was whether appellant had shot the victim, Terri Green, in self-defense or defense of her children. With regard to these defenses, the parties solicited evidence to establish where the parties were at the time of the shooting. It was to appellant's benefit to demonstrate that the victim was, or had been, on appellant's front porch, rather than on a nearby sidewalk, during the confrontation.

State's witness Veronica Gonzales witnessed the incident. During the prosecutor's direct examination of Gonzales, the following testimony was elicited:

Q: Now, after you saw Terri [Green] change clothes, or put on those warm-up pants, did you ever see Terri go up to the defendant's, Susie Alvarez–Mason's, steps?

A: No, she didn't.

Q: Did she ever go on to her steps?

A: No, she didn't.

Q: Did she ever go up to the door of Susie Alvarez–Mason?

A: No, she didn't.

Q: Did she ever go inside her house?

A: No, ma'am.

After the State passed Gonzales, appellant's counsel informed the court that he intended to ask the witness about her testimony in appellant's former trial. The prior trial had ended with a deadlocked jury. The trial court ruled that counsel could impeach the witness with a prior statement if counsel told her the contents of the statement, the time and place and person to whom it was made, and if he afforded her the opportunity to explain or deny the statement. *See* Tex.R.Crim.Evid. 612(a). In the jury's presence, the court instructed the witness that the prior trial would be referred to as a "prior proceeding."

Veronica Gonzales then testified on cross-examination as follows:

Q: Okay. Now, on this occasion, I know you said Ms. Green went toward Ms. Mason's house and she threw the bike and all, but do you recall that Ms. Green actually went up on to Ms. Mason's porch for just a second?

A: No. She did not go up there at all.

Q: Not even just to knock on the door?

A: Not even to knock on the door because she was standing there.

\* \* \* \* \* \*

Q: All right. In your prior testimony, do you recall being asked about where Ms. Green was at different times that day?

A: Yes.

Q: And do you recall being asked about whether she went up on the steps?

A: No.

Q: Do you recall that you said in a that prior proceeding that she did go up the steps?

A: No.

Q: Okay. You're saying you don't recall saying that?

A: I did not say she did.

Q: Okay. Have you ever told anyone, myself or anybody else, that she did go up on the steps?

A: No.

Appellant did not thereafter question Gonzales about any prior statements she had made concerning Green's presence on appellant's porch. Thus, appellant's inquiry

was whether Gonzales had ever made a prior statement that Green had gone "up on the steps."

On redirect examination, the prosecutor questioned Gonzales one more time about the matter as follows:

Q: Ms. Gonzales, Mr. Lewis [defense counsel] asked you about what you had testified to previously and you said you don't remember having testified that Terri Green went up to Ms. Mason's doorsteps and knocked on her door; is that correct?

A: Yes.

Appellant then examined Gonzales again but did not raise the same matter. On the day after the witness had testified and after the State had rested, appellant called as a witness the court reporter from the prior trial. Outside of the jury's presence, appellant asked the court reporter to find in her untranscribed notes Gonzales' former testimony concerning Green's presence on appellant's steps. The court reporter recounted Gonzales' testimony as follows:

Q: Then from there she went right up to Ms. Mason's door, right?

A: Yes, sir.

\* \* \* \* \* \*

Q: And I think you said that—that Ms. Green got fairly close to Mrs. Mason's door—

A: Yes.

Q: at one point

A: Yes

Q: How close did she get?

A: She got up to the porch.

Q: Up to the porch?

A: Yes.

■ Appellant offered the court reporter's testimony as extrinsic evidence of Gonzales' prior inconsistent statement. The State objected, arguing that appellant had not laid the proper predicate because the testimony had not been read to the witness and because the witness had not been given an opportunity to explain her testimony. The State further argued that there was a distinction between being "on the porch" and going "up to the porch" so that the prior testimony did not impeach the wit-

ness. The trial court sustained the State's objection, and appellant offered the above testimony in a bill of exception.[1]

 We find that the trial court did not err. Tex.R.Crim.Evid. 612 provides:

(a) **Examining witness concerning prior inconsistent statement.** In examining a witness concerning a prior inconsistent statement made by him, whether oral or written, and *before* further cross-examination concerning, or *extrinsic evidence of,* such statement may be allowed, *the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement.* If written, the writing need not be shown to him at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted. This provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2). (emphasis ours)

We first find that appellant did not lay the proper predicate for introducing the allegedly inconsistent statement. Texas adheres to and maintains its well settled common-law rule that a foundation must be laid before impeaching a witness with a prior inconsistent statement. *Allen v. State,* 788 S.W.2d 637, 640 (Tex.App.— Houston (14th Dist.) 1990, pet. ref'd). Appellant did not tell Gonzales the contents of the allegedly inconsistent statements or afford her an opportunity to explain or deny the statements. *See Lockard v. State,* 683 S.W.2d 166, 170 (Tex.App.—Fort Worth 1985, pet. ref'd). Moreover, in a similar case, the San Antonio Court of Appeals held that a trial court did not err in refusing to permit a defendant a belated opportunity to impeach a witness by having a court reporter read from her notes of a prior trial. *See Whiting v. State,* 755 S.W.2d 936, 941–942 (Tex.App.—San Antonio 1988, no pet.).

 A party who attempts to impeach a witness with a prior inconsistent statement should follow the procedure set forth in Tex.R.Crim.Evid. 612(a). When that procedure is followed, the witness is reminded of when, to whom, and in what context the allegedly inconsistent statement was made. The witness is then afforded the opportunity to admit having made the statement or explain or deny the statement. In the present case, the witness was not told the contents of the statement nor afforded the opportunity to admit, explain, or deny the statement. Accordingly, we agree with the State that appellant failed to lay the proper predicate.

 We also agree with the State that the statements from the prior proceeding are not necessarily inconsistent with Gonzales' testimony in this trial. From reviewing the trial exhibits,[2] it is apparent that a person could go "up to the porch" or "up to the door" without going "up on the steps." If appellant had followed the procedure outlined in Tex.R.Crim.Evid. 612(a), Gonzales would have been afforded an opportunity to explain. Since appellant did not give her the opportunity to do so, he cannot complain that the trial court erred in refusing to admit extrinsic evidence of a statement that is not patently inconsistent. Appellant's sole point of error is overruled.

The judgment of the trial court is affirmed.

---

**1.** Before submission, appellant requested to supplement the record on appeal with a transcription of Gonzales' former testimony. We granted the motion. Upon review of the case, we have concluded that it would be improper to consider that transcription since it was not offered into evidence at trial. Although both parties have referred to that transcription in their appellate briefs, we will not consider the transcription for any purpose.

**2.** The State introduced photographs showing appellant's front door, porch, steps, and sidewalk.