v.

**The STATE of Texas, State.**

**No. 2–93–401–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 30, 1994.

Rehearing Overruled Feb. 28, 1995.

Charles Baldwin, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles Mallin, Asst. Chiefs of the Appellate Section; and Anne E. Swenson, Carol Montgomery, David Montague, Asst. Dist. Attys., Fort Worth, for appellee.

Before FARRIS, LATTIMORE and WEAVER, JJ.

## OPINION

FARRIS, Justice.

Appellant, L.M.W., was convicted by a jury of the offense of indecency with a child by contact. TEX.PENAL CODE ANN. § 21.11 (Vernon 1994). The jury assessed punishment at confinement for three years, probated for eight years. In four points of error, appellant challenges the conviction contending the trial court erred in: 1) denying a motion for instructed verdict; 2) denying the right to introduce impeachment evidence; 3) denying the right to introduce evidence showing "illegal settlement negotiations;" and 4) refusing to permit testimony as to the meaning of the term "no bill."

We reverse and remand for a new trial.

The charges against appellant were first made while appellant and her husband, B., were divorcing. Appellant was accused of three instances of improper contact with her son, A.W.: 1) causing A.W. to touch her breast; 2) touching A.W.'s penis; and 3) intentionally exposing her genitals to A.W. The third allegation was dismissed before the case was submitted to the jury. Appellant contends the allegations were not true, and were at least partially the result of undue influence upon the child A.W. exerted by B.'s lover, S. S. was also in the process of divorcing her husband, and allegations of sexual abuse of her two daughters were made against her then-husband. Appellant argues there was a conspiracy between B. and S. to influence the testimony of the child, and that B. offered to exert influence upon the criminal process in appellant's favor if she would accept less favorable terms in the divorce settlement. In fact, appellant asserts the grand jury returned a "no bill" in her favor until B. intervened with the district attorney's office. Appellant contends the case was brought to the grand jury a second time, without certain testimony, and this time an indictment was issued.

In her first point of error, appellant contends the trial court erred in denying her motion for directed verdict at the close of the State's case as there was insufficient evidence to support paragraph two, count one, of the indictment. The indictment alleged:

[COUNT ONE, PARAGRAPH ONE] [Appellant] ... did THEN AND THERE INTENTIONALLY, WITH THE INTENT TO AROUSE AND GRATIFY THE SEXUAL DESIRE OF THE DEFENDANT OR WITH THE INTENT TO AROUSE AND GRATIFY THE SEXUAL DESIRE OF [A.W.], ENGAGE IN SEXUAL CONTACT BY TOUCHING THE GENITALS OF [A.W.], A CHILD YOUNGER THAN 17 YEARS AND NOT THE SPOUSE OF THE DEFENDANT,

PARAGRAPH TWO: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE SAID DEFENDANT ... DID THEN AND THERE INTENTIONALLY, WITH THE INTENT TO AROUSE AND GRATIFY THE SEXUAL DESIRE OF SAID DEFENDANT OR WITH THE INTENT TO AROUSE AND GRATIFY THE SEXUAL DESIRE OF [A.W.], ENGAGE IN SEXUAL CONTACT WITH [A.W.], A CHILD YOUNGER THAN 17 YEARS AND NOT THE SPOUSE OF THE DEFENDANT BY CAUSING [A.W.] TO TOUCH THE BREAST OF THE DEFENDANT.

In reviewing a complaint that the trial court erred in denying a motion for instructed verdict, we must review *all* evidence introduced at the guilt/innocence stage of the trial, not just the evidence presented by the State. If the evidence is sufficient to support the verdict, then the trial court did not err in overruling the motion for instructed verdict. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990). In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson*, 819 S.W.2d at 846.

At the close of the State's case, defense counsel moved for an instructed verdict on part of the indictment, arguing:

> There is no evidence whatsoever that of Paragraph Two, Count One, that she caused—the Defendant caused [A.W.] to touch the breasts of the Defendant in a sexual manner. I don't think there's one word of testimony at that point of this charge.
>
> . . . .
>
> [PROSECUTOR:] It was very clear in the testimony of [E.A.] that this Defendant would encourage [A.W.], and [A.W.] [sic] would fondle her breasts by saying, "I paid $1700 for them, play with them, kiss them" and [A.W.] would do this at her behest.

Appellant is correct that the State's attorney mis-stated the evidence before the jury at that point. However, while it is true that A.W. did not testify to any incident in which he touched appellant's breast, there was some testimony from E.A., a former nanny or housekeeper. E.A. testified she saw and heard appellant encourage A.W. to touch her breasts. "He would get here, towards her, and kiss her and he would touch her breasts. [Appellant] would say, 'Go ahead. They're worth $1700.'" (There was testimony appellant had breast implants.)

Appellant argues she was harmed because the jury could have convicted her upon either count, and the State strenuously argued for a conviction under that theory. No record reference was given in appellant's brief for that portion of the State's argument. We have read the arguments and found only one or two minor references to the breast touching allegation. It was not the principle element of the State's argument to the jury.

■ The State responds to appellant's argument by pointing out that where the jury renders a general verdict in an offense that may be committed two ways, and the defendant fails to challenge the sufficiency of the evidence to support one theory, we need not consider whether the evidence is sufficient to support the other theory as well. *Fuller v. State*, 827 S.W.2d 919, 931 (Tex.Crim.App. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex.Crim.App. 1982). Appellant did not challenge the sufficiency of the evidence to support the genital fondling charge, and conceded at the argument on the motion for directed verdict that there was some evidence on that count. Point of error one is overruled.

■ In her second point of error, appellant contends the trial court erred in preventing appellant from introducing into evidence a videotaped interview of A.W. conducted by Dr. William Hester, a psychologist, which contained exculpatory and impeaching evidence that directly contradicted the victim's trial testimony. Appellant did not offer the tape during cross-examination of A.W., but tried to introduce it prior to Dr. Hester's testimony. After viewing the tape, the trial judge appeared to find the tape irrelevant and unnecessary.

The State objected that the tape was hearsay and not admissible for impeachment purposes. It argued the only statement that might be admissible would be A.W.'s denial of sexual abuse, but that statement is also inadmissible because A.W. "admitted" on the stand that he told Dr. Hester something different than what he testified to at trial. State's trial counsel mischaracterized the child's testimony. He did not admit he told Dr. Hester a different story, he said he *did*

*not talk to him about the abuse,* implying Dr. Hester did not ask about abuse.

We have viewed the tape and found it to be of very poor sound quality. The camera and microphone were positioned next to Dr. Hester, while the child was seated on a sofa across the room. Dr. Hester's voice is so loud as to be garbled on occasion, while the soft voice of the child cannot always be coherently understood. The tape does clearly reveal the demeanor and body language of the child. He is playing with a toy helicopter, and wiggles about on the sofa as would any other child. He appears to be perfectly at ease, showing no defensiveness except on one occasion when he is asked if anyone has ever hurt him. His verbal response is "No" but he sits very still and clenches his left fist. The child's trial description of the interview with Dr. Hester is very different from what the tape shows.

The jury was forced to decide who was telling the truth about the interview at trial—Dr. Hester, the child, neither, or both. The better choice would have been to present the best evidence of the interview—the videotape—and let the jury view it for themselves. There were serious allegations made in this case that the children had been coached or influenced by their father and his girlfriend in their responses.

■ We find, however, that the trial court did not err in refusing to admit the tape as appellant failed to lay the proper predicate. Tex.R.Crim.Evid. 612 provides:

(a) **Examining Witness Concerning Prior Inconsistent Statement.** In examining a witness concerning a prior inconsistent statement made by him, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement. If written, the writing need not be shown to him at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be

admitted. This provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2).

*Id.* The rules of criminal evidence did not change the well-settled common-law rule that a foundation must be laid before impeaching a witness with a prior inconsistent statement. *Alvarez–Mason v. State,* 801 S.W.2d 592, 595 (Tex.App.—Corpus Christi 1990, no pet.); *Allen v. State,* 788 S.W.2d 637, 640 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). Appellant did not tell A.W. the contents of the allegedly inconsistent statements or afford him an opportunity to explain or deny the statements. *See Lockard v. State,* 683 S.W.2d 166, 170 (Tex.App.—Fort Worth 1985, pet. ref'd). As Tex.R.Crim.Evid. 612 was not followed, point of error two is overruled.

■ In her fourth point of error, appellant contends the trial court erred in refusing to allow evidence of the definition of the term "no bill." The jury heard testimony that appellant was initially no billed by the grand jury, and that it was only after B. intervened with the district attorney's office that the case was presented again to the grand jury, albeit with different testimony and witnesses. At that point, a true bill was returned against appellant which resulted in the conviction being appealed.

The record reflects appellant's attorney attempted to present testimony from another attorney explaining in basic terms what "no bill" means. We quote the record as it appears:

[APPELLANT'S ATTORNEY]: Your Honor, at this time, outside the presence of the jury, I'd like to explain, I would like to call Chris Phillips, as an attorney, just to testify that Tim Curry is the District Attorney, explain briefly what a grand jury is, explain briefly what a no bill is, and explain briefly what an indictment is.

THE COURT: Let me hear from the State.

[STATE'S ATTORNEY]: Judge—

THE COURT: If you have no objections, let's go with it.

[STATE'S ATTORNEY]: I don't have an objection to who Tim Curry is. I do

have an objection to what an indictment is and what a grand jury no bill means. In fact, the charge itself will say what the grand jury does; the fact [sic] the indictment is no evidence whatsoever in this case.

Of course, our second objection to Mr. Phillips is he's been sitting in here throughout the trial and has not been placed under the Rule. I don't mind stipulating that—in the presence of the jury that Tim Curry is the District Attorney of Tarrant County. That doesn't bother me at all.

THE COURT: Very well. The objection is sustained. And you want to make your bill? You can make it right now real quick and bring in the next witness, please.

The appellant's attorney then proceeded to present a very brief bill in which attorney Phillips testified a no bill "is the result of, when a felony case is presented to the grand jury and they consider it and decide that there is not sufficient evidence to bring formal charges, they return a no bill."

Appellant re-offered the testimony for the jury to hear, and the State's attorney replied: "We have the same objection that we already made, Judge." No substantive objection is preserved in the record other than the complaint Mr. Phillips may have violated the Rule. On appeal, the State argues the "evidence of what 'no bill' means is not admissible since it is not relevant." The State cites two cases which stand for the proposition that a prior "no bill" is not material in any way to the defense of a case. See Shumake v. State, 502 S.W.2d 758, 760 (Tex.Crim.App. 1973); Smith v. State, 474 S.W.2d 486, 489 (Tex.Crim.App.1971). While it is certainly a general proposition that a prior "no bill" is not relevant to whether a defendant is guilty of the charges then before the court, we disagree with the broad statement that the fact of a prior "no bill" is never relevant to the defense of a case, especially under the facts before the jury.

Appellant argues on appeal it was important for the jury simply to understand the judicial process and the meaning of the unfamiliar terms which had already been bandied about the courtroom. There is nothing in the record to show the purpose of the evidence was to prove appellant should be found "not guilty" merely because of a prior "no bill." Rather, the defense was trying to show a plan or scheme by which appellant had been "set up" by B. and S. and that there had been an attempt by B. to improperly intervene in the judicial process to have the case against appellant reopened so that B. could obtain sole custody of the couple's minor children. The State does not dispute appellant's allegations that the first grand jury, the one that issued a "no bill," heard more expert testimony concerning whether the children had been sexually abused than did the second grand jury. It is clear that the trial jury was concerned or at least confused on the issue as the foreperson sent out a note asking simply "I would like to know what 'no bill' means." The trial court's response was: "The instruction to the jury contain [sic] all definitions the Court can provide." This court is not taking the position that a jury is always entitled to have all questions answered or all of their curiosity satisfied on every topic that comes to mind. In this case, however, the factual information of what an unknown legal term meant was relevant to an understanding of appellant's defense of her case. We find Smith and Shumake are not applicable to these particular facts. The vague objection of the State's trial counsel is otherwise inadequate to justify withholding this relevant information from the jury.

■ Having found it was error to exclude evidence of the definition of "no bill," we must determine if the error was harmless. Appellate review of error in criminal cases usually involves a two-step process. Rose v. State, 752 S.W.2d 529, 553 (Tex.Crim.App. 1988) (op. on reh'g). Under the first step we have already determined that error occurred in the trial. In the second step, we must determine whether the error calls for reversal of the conviction, applying rule 81(b)(2) of the Texas Rules of Appellate Procedure. Harris v. State, 790 S.W.2d 568, 584 (Tex. Crim.App.1989).

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment

under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

TEX.R.APP.P. 81(b)(2).

 Our harmless error analysis must focus upon the error rather than the propriety of the outcome of the trial, trace its probable impact upon the jury, and determine whether it contributed to the conviction or punishment. *Harris*, 790 S.W.2d at 585–87. Review concentrates on the fairness of the trial and the integrity of the process. *Id.* We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Id.* at 587. This requires an evaluation of the entire record in a neutral, impartial and even-handed manner, not in the light most favorable to the prosecution. *Id.* at 586.

 There is no formula by which we can perform a harmless error analysis, but generally we first isolate the error and its effects, then ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.* at 587–88. If we are unable to determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment, we must reverse the conviction. *Id.* at 584. In view of the trial testimony as a whole, including the evidence improperly withheld from the jury discussed in this and in the next point, we cannot hold the error was harmless. Point of error four is sustained.

 In her third point of error, appellant contends the trial court erred in preventing appellant from introducing evidence showing B. had offered to influence the criminal proceedings favorably for appellant in return for concessions in the divorce proceedings. Specifically, appellant complains the trial court erred in excluding the testimony of two of appellant's former attorneys.

The first attorney, who had represented appellant in her divorce, testified outside the jury's presence that after September 15, 1990, he had a meeting with appellant, B., and B.'s attorney in which he was given a copy of defense exhibit 1, an affidavit by E.A., the former nanny. The affidavit stated the affiant had witnessed numerous instances of improper sexual contact or displays of sexual behavior between appellant and the child, and between appellant and "young men" who came to the house while B was at work. The affidavit gave details of those instances and stated that the affiant had repeatedly warned the appellant such conduct was improper but the appellant told the affiant to "get off [her] back." After being given the affidavit in the meeting, appellant's civil attorney stated he and his client were offered joint managing conservatorship and a 60/40 property split. This was the same offer previously made, except "They said that this case really needs to be resolved, that it's going to blow up, that the offer they're making is a reasonable offer and that I ought to really reconsider and ask my client to reconsider the joint managing conservatorship offer." The attorney further testified that if an affidavit like E.A.'s is filed in a divorce case, the Department of Human Services would automatically be called in to investigate to determine if charges needed to be filed with the district attorney's office.

Appellant rejected the settlement offer. The affidavit was subsequently the subject of a hearing in the divorce case to determine what access, if any, appellant would have to her children. Criminal charges related to the conduct described in the affidavit were filed against appellant. The attorney further testified that in his opinion if appellant had conceded to B.'s terms, the damaging affidavit would never have been filed because where there are allegations of sexual abuse, there can be no joint managing conservatorship under the law. *See* TEX.FAM.CODE ANN. § 14.021(h) (Vernon Supp.1994).

After the criminal charges were filed, appellant hired a criminal attorney. He, too, was offered a "deal" by B.'s attorney. By this time, the offer was that if appellant would agree to the same divorce terms offered earlier, B. would "voluntarily appear before the grand jury to inform the grand

jury that he didn't believe that these allegations were true, that she was a good mother, and do everything he could to help [appellant] or help us in the defense of the allegations before the grand jury." That offer was conveyed by appellant's civil attorney to appellant's criminal defense attorney.

After making a bill, appellant's trial counsel attempted to question her civil attorney in front of the jury concerning meetings among appellant, B., and their respective attorneys. The trial court sustained the State's objections that the questions were "repetitious", although our reading of the record reveals that those prior questions were asked in the bill of exceptions, *outside the jury's presence*. The questioning of the civil attorney ended as follows:

[DEFENSE COUNSEL]: Your Honor, I don't believe the jury has gotten that [testimony].

THE COURT: All right. You have one more question, Counsel, if you go back to—

Q. [DEFENSE COUNSEL]: Did you ever see anything about—

THE COURT: —a sustained objection.

Q. [DEFENSE COUNSEL]: — [L.M.W.] that makes you think she's—

THE COURT: Counsel, let me finish my statement.

[DEFENSE COUNSEL]: —an unfit mother?

[PROSECUTOR]: Your Honor, I'm going to object to that.

THE COURT: All right sir. You can step down.

[DEFENSE COUNSEL]: Your Honor—

THE COURT: You can step down.

[DEFENSE COUNSEL]: —that has nothing to do with negotiations [the subject of most of the State's objections]. You let people testify that [B.] is a great father.

THE COURT: You may step down.

[Witness leaves the courtroom.]

THE COURT: Who is the next witness, please.

[DEFENSE COUNSEL]: Let the record reflect that I'm not being able to question my witness. Thank you.

At that point, appellant's trial counsel called the attorney who had formerly represented appellant in her criminal case. This attorney was asked whether he had had conversations with his client and with her civil attorney about the divorce proceedings. He testified that he also had conversations with B.'s attorney who was acting as B.'s representative in the divorce case. At that point, the jury was again excused. In the bill of exceptions, the criminal defense attorney stated appellant's civil attorney relayed to him an offer to settle the criminal proceedings.

Q. [DEFENSE COUNSEL] What was that settlement offer?

A. That if [Appellant] would agree to withdraw her request for custody of the two children and to agree that managing conservatorship of the children would be given to [B.], that [B.] would appear before the Tarrant County grand jury to request that charges against [Appellant] be dismissed, or be no billed.

Q. And then thereafter did you confirm this with [B.'s divorce attorney]?

A. Yes, I did.

. . . .

Q. [BY DEFENSE COUNSEL] In your experience in law, when an attorney makes an offer to settle and have his client do something in exchange for something, does that happen?

A. That happens, yes.

Q. That is the purpose of having representatives of people, to get together and talk, isn't it?

A. Yes, sir.

Q. The purpose of settlement negotiations is to settle matters between two parties.

A. That's correct.

Q. All matters, if possible.

A. If possible.

Q. Did you believe, in your experience as a lawyer, that if the divorce was settled, [B.] would do that?

A. Yes, I did.

Q. Did you have any reason to doubt the words of [B.'s attorney] at all?

A. No, sir.[1]

At the close of each bill, appellant's trial counsel re-offered the evidence, asking the court if the jury could hear the excluded evidence now that the trial judge had heard the proposed testimony, a procedure we find to be in compliance with TEX.R.APP.P. 52(b). The trial judge responded by stating "The Court has already ruled. You're making a bill here, Counsel." Any attempt by trial counsel to have the record reflect the trial court was ruling the evidence was still inadmissible was met with statements such as "No. The Court is not ruling anything." or "Counsel, you're making your bill. We're not here to ask the Court to rule anymore." Clearly, the court was taking the position that the prior objection was still sustained.

Appellant's position at trial was that B. and his divorce attorney were trying to blackmail appellant into a favorable divorce settlement by threatening her with false criminal charges. Counsel argued that the nanny had made it plain she was very loyal to B. The actual live testimony of the nanny, while damaging to appellant, was very different from the extremely detailed allegations in the affidavit. Appellant's counsel pointed out that B. and his attorney took no action after obtaining the affidavits of the nanny, B.'s lover S., and two of S.'s children, for a month. During that time, appellant still had full visitation with the children she was allegedly abusing. Not until the divorce negotiations were not going B.'s way were the allegations of sexual abuse turned over to the authorities. Appellant argued such activities should be admissible to show B. did not believe the allegations (or he would have acted sooner in the interest of protecting his children) and to impeach his credibility. If appellant were found guilty, she could not have custody of the children and B. would have full custody.

The trial court, at one point, interrupted a bill and asked the witness if B. couldn't come in and testify to these settlement offers himself. Defense counsel reminded the court that he had just asked B. if he had ever offered appellant or her attorneys not to file the affidavit if she settled the divorce, and B. denied in front of the jury that he had ever done so. The court's response was an ambiguous "That's fine. Let's proceed, please."

Exactly what the State's objections were at trial are difficult to pinpoint, as the court frequently excluded testimony based on the word "Objection." The crux of the State's position at trial seemed to be that the evidence was not admissible because it was irrelevant under TEX.R.CRIM.EVID. 402, or was barred by TEX.R.CRIM.EVID. 408 as "negotiations" or "settlement." Additionally, objections were sustained that whether or not settlement offers were made or negotiations were successful were "hearsay." On appeal, the State also argues the evidence was barred under TEX.R.CRIM.EVID. 608(b).

■ This court has previously held all relevant evidence is admissible, except as otherwise provided by the constitution, by statute, or by applicable rule. *McKnight v. State*, 874 S.W.2d 745, 746 (Tex.App.—Fort Worth 1994, no pet.). We must determine whether the excluded evidence was relevant, and if it was, whether the constitution, statutes or rules prohibited its admission. *See* FED.R.EVID. 402; TEX.R.CRIM.EVID. 402. Generally, relevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.* A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony. *United States v. Abel*, 469 U.S. 45, 49, 105 S.Ct. 465, 467, 83 L.Ed.2d 450, 455 (1984). Evidence that B. was attempting to use the criminal justice

---

1. Earlier during the bill, the trial judge questioned the attorney as to whether he had affirmed "that [B.] had anything to do with it other than you lawyers' communications among yourselves and negotiating; is that correct?" If the trial judge was implying the criminal defense attorney should have contacted B. to verify the offer made by B.'s attorney, such action would have been a direct violation of Texas Disciplinary Rules of Professional Conduct Rule 4.02.

system for his own personal ends, or may have been retaliating against appellant for failing to comply with his divorce wishes, was probative of his bias against appellant, as well as probative of evidence that the charges could have been fabricated.

■ Although relevant to warrant its admission, this evidence might nevertheless be inadmissible if it is excluded by constitution, statute, or rule. *See* FED.R.EVID. 402; TEX. R.CRIM.EVID. 402. The State argues evidence of settlement offers in a civil suit is not admissible in a criminal case under rule 408. It cited us to no Texas cases, and we have found none on point under the criminal rule. The federal Second Circuit Court of Appeals has discussed a similar situation. In a prosecution for wire and mail fraud, statements made by the defendant in negotiating a settlement to a civil claim were admitted in the criminal trial.

According to its terms, Rule 408 does not exclude evidence of statements made in the course of settlement negotiations when that evidence is offered for a purpose other than proving the validity, invalidity or amount of the claim that gave rise to the settlement negotiations and, thus, the statements. In this criminal prosecution, Gonzalez's statements were admitted to establish that Gonzalez committed a crime, and their relevance to that issue does not depend on an inference that Banco Pinto had a valid civil claim against Gonzalez. The evidence was offered for a purpose other than one for which Rule 408 requires exclusion, and although that purpose is not one of the other purposes specifically named in Rule 408, the admission of the evidence is not barred by the Rule. *See United States v. Gilbert,* 668 F.2d 94, 97 (2d Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982).

In addition, the primary policy justification for Rule 408's exclusion in the civil context does not apply to criminal prosecutions. Rule 408 is premised on the idea that encouraging settlement of civil claims justifies excluding otherwise probative evidence from civil lawsuits. Fed.R.Evid. 408 advisory committee note. However, encouraging settlement does not justify excluding probative and otherwise admissible evidence in criminal prosecutions. The public interest in the disclosure and prosecution of crime is surely greater than the public interest in the settlement of civil disputes. It follows that since nothing in the Rule specifically prohibits receiving in evidence the admissions and statements made at a conference to settle claims of private parties, they are admissible in any criminal proceeding.

*United States v. Gonzalez,* 748 F.2d 74, 78 (2d Cir.1984). The Texas Rules of Criminal Evidence are based in great measure upon the Federal rules. While we are not bound by this federal court of appeals opinion, it is certainly instructive as to the intention of the rules drafters and the proper application of our rule 408. *Callaway v. State,* 818 S.W.2d 816, 831 (Tex.App.—Amarillo 1991, pet. ref'd.). The exceptions to the Texas civil and criminal rule 408 are broader than the Federal rule in that they expressly permit "evidence of compromise offers, acceptances, or negotiations to be used to prove bias, prejudice, or interest of a witness or a party." Wendorf, Schlueter & Barton, *Texas Rules of Evidence Manual,* IV–128 (3rd ed. 1994). Rule 408 also permits introduction of attempted settlement when such is offered to show an effort to obstruct a criminal prosecution or proceeding. *Id.* at IV–131.

The State argues the evidence does not meet the exceptions of 408 and that the evidence was available from other sources. What those sources were is not pointed out, and as stated earlier, appellant did ask B. if he made such offers to settle, and he denied it before the jury. While we agree with the State that there was a potential for the trial to be longer and more complicated if details of the civil divorce proceedings had come in, we do not believe justice would have been significantly delayed nor compromised as the bills were very short.

■ The State also argued the evidence was hearsay and not admissible. It appears to us that these statements were not offered for the truth of the matter asserted, but simply for the *fact* that they were made— which would take them out of the realm of hearsay. Alternatively, if they were offered

for the truth of the matter asserted, there is an exception under TEX.R.CRIM.EVID. 801 which makes them admissible.

■ The general provision of rule 408 excluding evidence of compromise offers of civil suits should not be confused with attempts to bribe or influence a witness. Such actions would be admissions by conduct of a party-opponent and admissible under TEX. R.CRIM.EVID. 801(e)(2). *See Cuyler v. State,* 841 S.W.2d 933, 935 (Tex.App.—Austin 1992, no pet.) (statements made by a rape victim could be admissible under 801(e)(2) as admissions of a party-opponent.) The rule removes such admissions from the category of being hearsay, although they technically otherwise fit the definition. The exclusions of 801(e)(2) include admissions by an agent of the person. Appellant argued that B.'s attorney was his agent and authorized to bargain for him. Additionally, the first disputed offer to settle was made in the presence of B., and if his attorney was acting contrary to his wishes, his silence made the actions of the attorney his own. TEX.R.CRIM.EVID. 801(e)(2)(B, C, & D). *See, e.g., Zuniga v. State,* 811 S.W.2d 177, 181 (Tex.App.—San Antonio 1991, no pet.). Because we hold the evidence was admissible under these exceptions, we need not address whether it was also admissible under the co-conspirator exception of 801(e)(2)(E) to prove S. was conspiring with B. to help him get custody and vice versa.

The State additionally argues the evidence could not be used to attack the credibility of B. under: *Moody v. State,* 827 S.W.2d 875 (Tex.Crim.App.1992); *Murphy v. State,* 587 S.W.2d 718 (Tex.Crim.App. [Panel op.] 1979); and *Rushton v. State,* 695 S.W.2d 591 (Tex. App.—Corpus Christi 1985, no pet.). We find these cases to be distinguishable, or to contain language that the evidence in dispute may be admissible under certain circumstances. In *Rushton,* a child sexual abuse case, the defense claimed the trial court improperly excluded evidence that the child had previously accused another of engaging in sexual intercourse with her. The facts as stated in the opinion reveal that the victim in that case had told her baby sitter, Trotter, that the victim and Trotter's grandson had removed their clothes and "bumped" in the bathroom. The court stated:

> While we agree with the State that this evidence was inadmissible, we do not agree with its analysis of the situation. It is clear that if the evidence had shown that CC had previously made false accusations of sexual misconduct, the trial court would have erred in excluding such evidence (assuming the proper predicates had been established); this is so even though specific acts of misconduct are generally inadmissible for impeachment. See *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *Thomas v. State,* 669 S.W.2d 420 (Tex.App.—Houston [1st Dist.] 1984, pet ref'd.). In the present case, however, there is no evidence showing that CC made false accusations. The evidence, even viewing it in appellant's favor, shows only that Trotter did not believe CC. Moreover, our review of the record shows that the evidence excluded was already substantially before the jury.

*Rushton,* 695 S.W.2d at 594.

In *Murphy,* the defendant presented an alibi witness, his girlfriend Sheryl, to prove he did not commit an aggravated robbery. The State then introduced evidence by a store clerk that he was robbed by Murphy's younger brother while Murphy and Sheryl waited in the getaway car. The court of criminal appeals agreed the evidence should not have been admitted, and stated as the State quotes in its brief "[I]t has long been the law of this State that proof of either mere accusations, or specific acts of misconduct, is inadmissible to affect the credibility of the accused or any other witness." *Murphy,* 587 S.W.2d at 722. The court went on to say, however,

> In limited circumstances, proof of the fact that charges have been filed against a witness may become admissible upon a showing that such evidence tends to establish prejudice, interest, bias or motive of the witness in testifying as he has. *Simmons v. State,* 548 S.W.2d 386 (Tex.Cr. App.1977); *Evans v. State,* 519 S.W.2d 868 (Tex.Cr.App.1975); *Blake v. State,* 365 S.W.2d 795 (Tex.Cr.App.1963). *See also Davis v. Alaska,* 415 U.S. 308, 94 S.Ct.

1105, 39 L.Ed.2d 347 (1974). These cases all deal with the admissibility of charges pending against *prosecution* witnesses, however, where a likelihood exists that in exchange for such testimony for the State the witness will ultimately benefit (or has benefited) in negotiations concerning his own criminal charge. In most cases, however, proof of a pending charge against, or commission of an extraneous offense by, a *defense* witness has no bearing on his motive to testify *for* an accused, see, e.g., *Fentis v. State*, 528 S.W.2d 590 (Tex.Cr. App.1975), and thus, the provisions of Article 38.29, supra, control. We fail to see how evidence of the robbery of Whittle, and the fact that charges therefor were pending against appellant and Sheryl Davis bore on the issues of these witnesses' bias or interest in testifying as they did in the instant case.

*Murphy*, 587 S.W.2d at 722–23 (emphasis added) (footnotes omitted). We find *Murphy* to support our ruling that the evidence in this case, which showed a bias or motive for the witnesses to testify as they did against the defendant, should have been heard by the jury.

As to *Moody*, the court did hold that evidence of specific prior acts of bad conduct of a deputy sheriff were not admissible in Moody's trial as a general rule. The court also stated, however, that "it is not within a trial court's discretion to prohibit a defendant from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of a witness. *Hurd v. State*, 725 S.W.2d 249, 252 (Tex.Cr. App.1987)." *Moody*, 827 S.W.2d at 891. The court pointed out Moody failed to show how the prior actions of the deputy (which related to another person, not Moody) showed bias or animus or other reason to question the truth of the deputy's testimony in Moody's trial. *Id.*

■ Having held it was error to exclude the testimony of the two lawyers concerning settlement offers made by B. and his attorney, we must decide if the error was harmless under the same standard detailed above in point four. The State argues any error was harmless as the "specter of these alleged

settlement negotiations was raised before the jury through the cross-examination of [B.]." The vague reference to settlement heard by the jury when B. denied flatly that any offers had been made were indeed ghostly, and presented a very different picture from the very material and solid declarations by the two attorneys that B.'s attorney attempted to use the affidavit of the nanny and the criminal process itself to force appellant into an unfavorable custody and property settlement agreement. Error in excluding evidence is only waived where *substantially* the same evidence is admitted elsewhere. *Hicks v. State*, 860 S.W.2d 419, 430–31 (Tex.Crim.App. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2725, 129 L.Ed.2d 848 (1994). Such was not the case here.

Because the trier of fact, in this case the jury, did not have before it all the relevant evidence necessary to evaluate the truthfulness and potential bias of the major witnesses against appellant, we cannot find beyond a reasonable doubt the error did not contribute to the conviction of this defendant under the facts of this case. Point of error three is also sustained and the cause is reversed and remanded for a new trial.