IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-94-031-CR




HERMAN LEE KINDRED,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE




 




FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT



NO. 43,482, HONORABLE WILLIAM C. BLACK, JUDGE PRESIDING



 





 Appellant was convicted of the offense of theft of property having a value of less
than $750, elevated to a third degree felony by three prior theft convictions. See (1) (Tex. Penal
Code Ann. § 31.03(e)(4)(E), since amended and renumbered as § 31.03(e)(4)(D)). The jury
assessed punishment, enhanced by prior felony convictions, at confinement for life. Appellant
asserts seven points of error, contending that the trial court erred by: (1) abusing its discretion
in refusing to permit appointed trial counsel to withdraw from the case; (2) abusing its discretion
by refusing to set a reasonable bond; (3) failing to grant appellant an examining trial; (4) refusing
to suppress the fruits of an illegal search; (5) sustaining the State's objection to appellant's cross-examination of a witness; (6) finding that the evidence was legally sufficient to support the
conviction; and (7) finding that the evidence was factually sufficient to support the conviction. 
We will overrule appellant's points of error and affirm the judgment of the trial court.

 Christina Peccarelli, assistant store manager of Beall's Department Store in
Temple, described the events that occurred shortly after the store opened on August 4, 1993. Pam
Hickey, a sales associate, told her that a man had walked in, taken a dress and gone to a corner. 
Peccarelli walked toward the designated corner where she observed appellant kneeling on one
knee and stuffing something off-white down his blue jeans. Peccarelli said, "Sir, I think we have
a problem." Appellant responded by walking away "very fast." When Peccarelli "yelled" to
another employee to call mall security, appellant started running. A pant hanger used for hanging
pants and skirts and a coat hanger were found where appellant had been standing. Hickey advised
Peccarelli that the shoplifter had picked up an "off-white dress outfit." Peccarelli was able to
determine the brand name and description of the article that had been taken as a result of her
knowledge of the store's inventory on that date.

 George Wehrmaker, manager of the landscape maintenance for the Temple Mall,
testified that shortly after the mall opened on the day in question, appellant came through a mall
door and "went running by" in a manner that caused Wehrmaker to pursue appellant as he drove
away in a car. Wehrmaker abandoned his pursuit after appellant ran a red light, but he was able
to write down the description and the license tag number of the vehicle. Temple Police Officer
Stan Corbitt testified that the mall was in the area he had been assigned to patrol on the day in
question. After Wehrmaker reported the incident to him, Corbitt went to Beall's, where Peccarelli
furnished him with information about the property that had been stolen from the store. The
description of the vehicle Wehrmaker furnished Corbitt enabled Corbitt to determine that the
vehicle belonged to Charlette Taylor, whose address was listed as apartment 412 in the Wayman
Manor apartment complex.

 Lieutenant Dale Fletcher of the Temple Police Department testified that in response
to a radio report of the theft, he went to the Wayman Manor apartments where he located the car,
felt its hood, and determined that it was still hot. Fletcher knocked on the apartment door and
received no response. Sharon Brown, a Beall's employee, saw Charlette Taylor wearing a two-piece suit on August 15 like the one that was stolen. Taylor was with appellant on that occasion. 
Brown testified that she had a special reason for noticing Taylor's attire because it was "unusual
for her to wear clothing of that quality."

 Lieutenant Jeff Straub of the Temple Police Department testified that Peccarelli
identified appellant as the thief from a photographic line-up. Straub obtained a warrant for
appellant's arrest and a search warrant for apartment 412 in Wayman Manor. Police conducted
the search on August 19 and recovered a two-piece ladies suit that Peccarelli identified as the
clothing by "description, color, make" as "definitely" the property that had been taken. Under
cross-examination, Peccarelli testified that the manufacturer "Stuart Allen" made more than one
suit like the one in question, but that Beall's was the only mall store that carried that brand.

 Charlette Taylor testified that appellant was the father of her two children, but that
he only lived with her in the apartment on the weekends. Taylor stated that her grandmother-in-law, Ethel Kindred, gave her the clothing in question on Valentine's Day in 1993. In response
to questions relating to the morning in question, Taylor testified that she did not drive her car, she
did not let anyone else drive it, and appellant was not in her apartment that morning. Appellant's
grandmother, Ethel Kindred, testified that she bought the clothing with cash at the mall, but did
not remember the name of the store.

 In his sixth point of error, appellant asserts that the evidence is legally insufficient
to support the conviction. Appellant reasons that the evidence only establishes that appellant
attempted to appropriate a fabric item while he was kneeling down in the store. Since conviction
was dependent on circumstantial evidence, appellant urges that the circumstances did not exclude
every other reasonable hypothesis except the guilt of appellant.

 Recognizing that jurors are no longer instructed on the law of circumstantial
evidence, and that direct and circumstantial evidence are equally probative, the Court of Criminal
Appeals in Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991), rejected the former analysis
for sufficiency of the evidence that circumstantial evidence must exclude every other reasonable
hypothesis other than guilt. The Geesa court found that an appellate review which focused on the
outstanding reasonable hypothesis analysis "effectively repudiates the jury's prerogative to weigh
the evidence, to judge the credibility of the witnesses, and to choose between conflicting theories
of the case. When understood from this perspective, the construct effectively places the reviewing
court in the posture of a 'thirteenth juror.'" Id. at 159. Since the instant cause was tried in
September 1993, a date following the effective date of Geesa, our review of the sufficiency of the
evidence does not include a determination of whether there is an outstanding reasonable hypothesis
inconsistent with guilt. We note that the trial court gave the definitional instruction on reasonable
doubt that was formulated by the Geesa court. See id. at 162.

 In reviewing the evidence as an appellate court, we must thus determine whether,
viewing the evidence in the light most favorable to the conviction, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 319 (1979); Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989),
overruled by Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991) (overruled to the extent
the opinion conflicted with Geesa by using analytical construct of excluding every reasonable
hypothesis). Since the exclusion of the reasonable hypothesis analysis in circumstantial evidence
cases, the Jackson standard is applicable in determining the legal sufficiency of the evidence in
all criminal cases.

 Appellant was observed stuffing an off-white article of clothing in his pants shortly
after the store opened on the day in question. Appellant fled the scene when he was approached
by Peccarelli. The description and brand of the stolen clothing was determined from a check of
the store's inventory. Appellant departed the mall in a vehicle registered to Taylor. The vehicle
was found shortly after the theft in front of Taylor's apartment. The dress or suit was seized in
a search of Taylor's apartment, and Peccarelli identified it as being of the exact same description
as the two-piece suit that was stolen on the occasion in question. The jury, as the factfinder, was
in a position to accept or reject the credibility of the explanation given by the defense witnesses. 
Esquivel v. State, 506 S.W.2d 613, 615 (Tex. Crim. App. 1974). Viewing the cumulative effect
of all the incriminating circumstances, we conclude that any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Appellant's sixth point of error
is overruled.

 In his seventh point of error, appellant urges that the evidence is not factually
sufficient to support the conviction. In Stone v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992,
pet. ref'd untimely filed), this Court set forth the following standard for a factual review of the
evidence:



[T]he court views all the evidence without the prism of 'in the light most favorable
to the prosecution.' Because the court is not bound to view the evidence in the
light most favorable to the prosecution, it may consider the testimony of defense
witnesses and the existence of alternative hypotheses. The court should set aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.



Id. at 381 (citations omitted). After considering and weighing all the evidence pursuant to the
dictates of Stone, we conclude that the jury's verdict is not so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Appellant's seventh point of error is
overruled.

 In his first point of error, appellant contends that the trial court abused its discretion
in refusing to allow trial counsel to withdraw from the case. Following his arrest on August 17,
1993, appellant's bond was set at $50,000. Bond was reduced to $20,000 at a September 1
hearing at which appellant was represented by retained counsel. Shortly thereafter, retained
counsel filed a motion to withdraw based on appellant's repetitive telephone calls, abusive
language to his staff, and contacts by appellant to a degree that progress could not be made on
appellant's or anyone else's case. Appellant joined in the motion that was granted by the trial
court on September 13.

 Appellant appeared pro se at a hearing on September 30 that the trial court had set
on appellant's pro se motions filed on September 8. The trial court advised appellant that it had
appointed Jon McDurmitt and Riley Simpson to represent him. Appellant told the court, "Right
now, I am pro se -- if I feel down the road that I need representation, I will not be scared to file
a motion for representation, but right now the defendant ain't going to put his signature on
nothing." Appellant indicated that he would decline to talk to the court-appointed lawyers. The
State later filed a motion to amend the indictment to change the alleged stolen item from a "dress"
to a "two piece woman's suit." Appellant opposed the motion and requested that Riley Simpson
be appointed lead counsel, with either Sam Appell or Jon McDurmitt as co-counsel.

 At a pretrial hearing on October 13, the court advised appellant that Appell and
McDurmitt were available to represent him. Appellant told the trial court that he was unable to
go to trial without counsel, but that he "just had too many conflicts with these Bell County
attorneys." Appellant persisted in refusing to sign a request for appointment of counsel, expressed
a desire for counsel, but stated a dislike for counsel named by the court. The court reminded
appellant that it had appointed two attorneys he had earlier requested, and that it was not going
to hear the State's motion to amend the indictment until appellant was represented by counsel. 
At this point, appellant accepted court-appointed counsel. 

 At the next hearing on October 19, both of appellant's court-appointed attorneys
filed motions to withdraw. Appell's motion, joined by appellant, stated that appellant had
threatened court action against Appell. McDurmitt advised the court that appellant wanted him
to resign in order that he might employ his own counsel. The court granted Appell's motion and
denied McDurmitt's motion. After noting that it had done everything it could to please appellant
by appointing the attorneys he had requested, the court advised appellant that if he did not want
Mr. McDurmitt, "then you can go to trial on November 1, 1993, and no continuance will be
granted." Appellant responded, "I will keep Mr. McDurmitt on the case." 

 On October 21, McDurmitt filed a second motion to withdraw, citing appellant's
charges that counsel was in sympathy with the State and a poor attorney. McDurmitt's motion
made note of the fact that appellant had been acquitted in a prior felony case in which he had
represented appellant. Attached to counsel's motion was a letter from appellant to McDurmitt in
which appellant expressed dissatisfaction with counsel's representation and stated the manner in
which appellant expected counsel to handle specified phases of the trial. The court denied
counsel's second motion.

 On November 15, appellant filed a motion to dismiss his appointed counsel,
asserting his right to "handle my case pro se -- His [McDurmitt's] performance falls below an
objective standard. -- He does everything the D.A.'s office tells him to do." McDurmitt filed
a third motion to withdraw on November 17. At a hearing on November 24, appellant withdrew
his motion to dismiss appointed counsel. Prior to trial on the merits on December 3, 1993,
appellant advised the court that appointed counsel had fully investigated the case and requested
that McDurmitt serve as his attorney. Appellant wrote McDurmitt a letter after the trial had
concluded in which he stated that counsel was ineffective, "You sold me out -- and I promise I
will not let you get away with this not ever." McDurmitt filed a fourth motion to withdraw that
was granted.

 While it is generally within the discretion of the trial court to determine whether
trial counsel should be allowed to withdraw, the right to counsel may not be manipulated so as
to obstruct the judicial process or interfere with the administration of justice. Green v. State, 840
S.W.2d 394, 408 (Tex. Crim. App. 1992), cert. denied, 113 S. Ct. 1819 (1993). Conflicts of
personality and disagreements between counsel and client are not automatic grounds for
withdrawal. Solis v. State, 792 S.W.2d 95, 100 (Tex. Crim. App. 1990). The trial court is under
no duty to search for a counsel until an attorney is found who is agreeable to the accused. Id.;
Viges v. State, 508 S.W.2d 76, 77 (Tex. Crim. App. 1974). Appointment of new counsel is a
matter solely within the discretion of the trial court. Solis, 792 S.W.2d at 100.

 At the outset, we note that appellant is not asserting that he received ineffective
assistance of counsel. Appellant's expressed dissatisfaction with his court-appointed counsel (in
the trial court) extended to all attorneys in Bell County. Moreover, prior to trial, appellant
expressed his desire to have McDurmitt represent him. The difficulty of representing appellant
is reflected by motions to withdraw filed by his retained counsel as well as court-appointed
counsel Appell.

 Appellant directs our attention to appointed counsel's action in attaching his
confidential letter to his second motion to withdraw. "A client has a privilege to refuse and to
prevent any other person from disclosing his confidential communications made for the purpose
of facilitating the rendition of professional legal services to the client. . . ." Tex. R. Crim. Evid.
503(b). State bar rules prohibit a lawyer from knowingly revealing a confidence or secret of his
client to the disadvantage of the client or advantage of himself, unless the client consents after full
disclosure except when allowed under DR 4-101(C). Tex. Disciplinary R. Prof. Conduct R 4-101(B)(2), (3) (State Bar Rules X, § 9). Appellant's dissatisfaction with his court-appointed
counsel could hardly be characterized as secret or confidential in light of appellant's repeated
complaints about his counsel and all other Bell County attorneys. In addition, DR 4-101(C)(4)
permits a lawyer to reveal confidences or secrets to defend himself against an accusation of
wrongful conduct. Id. 4-101(C)(4). Assuming that appellant's complaints about counsel prior
to the time in question did not constitute accusations of wrongful conduct, appointed counsel could
have reasonably anticipated such charges. We hold that the trial court did not abuse its discretion
in refusing to allow trial counsel to withdraw from the case. Appellant's first point of error is
overruled.

 In his second point of error, appellant contends that the trial court abused its
discretion in refusing to set a bond that was reasonable under the circumstances of the case. 
Appellant urges that his continued incarceration on excessive bail prevented him from retaining
an attorney of his own choosing.

 At the hearing where the trial court reduced appellant's bond from $50,000 to
$20,000, appellant testified that he had jobs washing dishes at a local country club and working
at a tire warehouse. Waymond Wallace, owner of American Bail Bond, testified that under the
circumstances of the case, he would write a $10,000 bond if appellant were able to pay the fee
for the bond and his grandmother or other relative in Temple would sign the bond. Appellant
listed his ties to the community as a wife and numerous other relatives. Appellant's prior record
included convictions for burglary of a habitation, burglary of a vehicle, forgery by passing, bond
jumping and misdemeanor theft. At the time of the hearing, appellant was on parole from a
twenty-year's sentence of confinement.

 In setting bond, the court may consider the punishment permitted by law, the
defendant's prior criminal record, and conformity with previous bond conditions. Ex parte
Rubac, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981). While a defendant's ability to make bail
is to be considered, it does not control the amount of bail. Ex parte Charlesworth, 600 S.W.2d
316, 317 (Tex. Crim. App. 1980).

 Although a bondsman testified that he would make a $10,000 bond for appellant
if he could pay for it and a relative in Temple would sign it, appellant has not shown whether he
could comply with either condition. The indictment alleged two prior felony convictions for
enhancement of punishment. Thus, appellant faced a possible punishment of confinement for life. 
Tex. Penal Code Ann. § 12.42 (West 1994). Appellant was on parole at the time of trial. A lack
of conformity with conditions of a prior bond was shown by his conviction for bond jumping. 
Appellant urges that he was not shown to have been a danger to the community if he had been
released. See Tex. Code Crim. Proc. Ann. art. 17.15(5) (West Supp. 1994). While none of
appellant's prior convictions were for per se violent crimes, we take judicial knowledge of the fact
that the offense of burglary of a habitation has the potential of danger to the lives of victims. We
thus hold that the trial court did not abuse its discretion in setting appellant's bail at $20,000. 
Appellant's second point of error is overruled.

 In his third point of error, appellant asserts that the trial court erred in failing to
grant his pro se request for an examining trial. Appellant asserts that the denial of an examining
trial prevented him from bringing to the court's attention the matter of his inability to make the
$20,000 bond. Appellant urges that we consider the cumulative effect of "excessive bail," the
trial court's refusal to dismiss his court-appointed trial counsel, and the trial court's denial of an
examining trial. Our disposition of prior points of error is dispositive of the matter of bail and
dismissal of counsel.

 An indictment was returned against appellant on September 22, 1993, one week
after appellant had made a request for a hearing on his pro se motions and eight days after his
retained attorney withdrew from the case. Beebe v. State, 811 S.W.2d 604 (Tex. Crim. App.
1991), cited by appellant, relates to a trial court's failure to comply with the mandatory statute
granting a defendant's request for an additional ten days to prepare for trial following the
amendment of an indictment. Id. at 606. Appellant acknowledges that it is "well-settled law" that
the return of an indictment terminates the right to an examining trial. See Gooden v. State, 465
S.W.2d 645, 646 (Tex. Crim. App. 1968). We perceive no harm to appellant as a result of his
not receiving an examining trial prior to indictment. Appellant's third point of error is overruled.

 In his fourth point of error, appellant urges that the trial court erred in refusing to
suppress the fruits of a search pursuant to a defective search warrant. Appellant's complaint is
directed to the admission of items seized at Taylor's apartment.

 The following occurred when the complained of evidence was introduced during
the trial on its merits:



 MR. CARROLL [prosecutor]: Your Honor, we would offer State's Exhibits
4, 5 and 6 at this point having been identified and authenticated by the officer.


 MR. McDURMITT [defense counsel]: No objection to 4 and 5. I think it is
4 and 5.


 MR. CARROLL [prosecutor]: Four, 5, and 6. Four would be the bag. Five
and six would be the two-piece women's suit.


 MR. MCDURMITT [defense counsel]: No objection.



When the defendant affirmatively asserts during trial that he has "no objection" to the admission
of the complained of evidence, he waives any error in the admission of the evidence despite a
previous adverse ruling in a hearing before the court. See Gearing v. State, 685 S.W.2d 326, 329
(Tex. Crim. App. 1985). Appellant's fourth point of error is overruled.

 In his fifth point of error, appellant contends that the trial court erred in sustaining
the prosecutor's objection to defense counsel's cross-examination of Peccarelli regarding
appellant's weight. Appellant's complaint arises as a result of the following cross-examination
of Peccarelli by defense counsel:



Q: Did you describe the individual that --


A: Yes, I did.


Q: Okay. And how did you describe that individual?


A: I said that he was an African-American male over six feet with facial hair,
curly black hair, wearing blue jeans and a dark suit buttoned down.


Q: Did you mention a weight?


A: I cannot recall if I did or not.


Q: Would you be surprised if the police report shows a weight of 240 pounds?


A: Did I say that it was --


Q: No. ma'am.


A: Did I say --


Q: I am saying would you be surprised if the police report --



The State's objection that defense counsel was "trying to impeach her with the police report" was
sustained.

 Before a witness may be impeached with a prior inconsistent statement, whether
written or oral, the witness must be told the contents of such statement, the time and place of the
statement and the person to whom it was made, and must be afforded an opportunity to explain
or deny such statement. Tex. R. Crim. Evid. 612(a); Alvarez-Mason v. State, 801 S.W.2d 592,
595 (Tex. App.--Corpus Christi 1991, no pet.). In the instant cause, defense counsel told the
witness that she did not make the statement regarding appellant's weight. Appellant did not lay
the proper predicate to cross-examine the witness concerning a prior inconsistent statement. 
Appellant's fifth point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Aboussie, B. A. Smith and Davis*

Affirmed

Filed: January 11, 1995

Do Not Publish


* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1.   Act of May 23, 1991, 72d Leg., R.S., ch. 565, § 1, Tex. Gen. Laws 2003.